OPINION
{¶ 1} Defendant-Appellant William Dixon appeals from his conviction and sentence on one count each of Complicity to commit: Aggravated Robbery; Aggravated Burglary; and Felonious Assault, each with a firearm specification. Dixon contends that his maximum, consecutive sentence violates State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. We *Page 2 
conclude that State v. Foster, permits a trial court, within its discretion, to impose maximum, consecutive sentences. On this record, we find no abuse of discretion.
 {¶ 2} Dixon next contends that his trial counsel rendered constitutionally ineffective assistance of counsel. We find nothing in the record constituting ineffective assistance of counsel, or otherwise supporting this contention. Dixon also contends that his trial counsel prevented him from testifying in his own defense, but we find nothing in the record to support this contention.
 {¶ 3} Dixon contends that the trial court erred by denying his motion, made on the first day of trial, for a continuance to permit him to replace his retained counsel. We find no abuse of discretion in this regard.
 {¶ 4} Dixon contends that the trial court abused its discretion by denying his motions for a mistrial when evidence was elicited concerning his prior bad acts. We find that on only one of these two occasions was evidence of a prior bad act in fact elicited, that there is nothing in the record to suggest that the State contrived to get this evidence before the jury, it having come in the form of a response to the prosecutor's question that was not reasonably called for by the question, and that the trial court sustained Dixon's objection and motion to strike this testimony, instructing the jurors to disregard it. We conclude that the trial court did not abuse its discretion in denying Dixon's motions for a mistrial.
 {¶ 5} Finally, Dixon contends that his convictions are against the manifest weight of the evidence. Based upon our review of the record, we conclude that Dixon's convictions are not against the manifest weight of the evidence.
 I *Page 3 {¶ 6} In June 2005, Shoshana Harbor was living with her husband and son in a home on Lynnaway Drive in Dayton. While fixing dinner early one afternoon, Shoshana heard her front doorbell ring. At the door Shoshana found a young woman in her twenties, wearing a long black skirt and a white blouse. The woman, who was later identified as Devon Schultz, told Shoshana that her car was out of gas and asked to use the phone. Shoshana agreed, but she shut the door leaving Schultz on the front porch before heading to the kitchen to get the phone. As Shoshana returned to the front door, she was surprised to see Schultz standing in the front hallway. Schultz asked for the phone, which Shoshana gave her, and then Schultz put a gun to Shoshana's head.
 {¶ 7} Seeing that Schultz was distracted, Shoshana tried to take the gun away from her. They fought briefly, during which time Schultz shot Shoshana in the left leg and in the left side of her chest. Nevertheless, Shoshana was able to push Schultz out the front door, and Schultz ran away. Shoshana also ran outside, screaming for help. Seeing two young men outside her house, she yelled to them for help. The two men, later identified as Dixon and Peter Roach, ran after Schultz.
 {¶ 8} After the getaway driver, Angela Walton, heard a commotion over the walkie talkie, she returned and picked up Schultz, but Dixon and Roach waved her on. Walton dropped Schultz off at a nearby drug store and returned to pick up Dixon and Roach.
 {¶ 9} Several neighbors and Shoshana's son, Solomon, saw various parts of the events. As the first police were arriving on the scene, they videotaped the getaway car on a camera in the cruiser. Witnesses were able to give police descriptions of the conspirators as well as the car.
 {¶ 10} After the failed robbery, Dixon, Schultz, and Walton fled to Arkansas. The *Page 4 
women were arrested in Maryland in October 2005. Soon after, Roach was apprehended in Springfield, Ohio. Dixon was arrested in Arkansas in March 2006.
 {¶ 11} During the course of their investigation, police learned that Dixon had planned to rob the Harbors with the help of Devon Schultz, Angela Walton, and Peter Roach. Although Dixon did not know the Harbors, he believed that they kept several hundred thousand dollars in their home.
 {¶ 12} Dixon not only suggested the robbery, he was instrumental in planning it. He went to a thrift store, where he purchased the clothing and jewelry that Schultz wore. Dixon bought ammunition and loaded a gun that he then provided to Schultz. After Schultz dressed in the clothes that Dixon had purchased, he taped the gun to her leg. Dixon provided Walton with a walkie talkie in order to keep in contact with her. Dixon drew a map for the participants, showing them the neighborhood around the Harbor home, and led them to the home the afternoon of the crimes.
 {¶ 13} Dixon and his conspirators were each indicted on one count each of Complicity to commit: Aggravated Robbery; Aggravated Burglary; and Felonious Assault. All charges carried firearm specifications. After the trial court overruled Dixon's two motions to suppress, Dixon filed numerous pro se motions, all of which the trial court overruled because he was represented by counsel. By the time of Dixon's trial, Schultz, Walton, and Roach had already pled guilty as charged and were serving their sentences. On the first day of Dixon's trial, Dixon sought leave of the trial court to replace his retained counsel. The trial court overruled the motion, and the case proceeded to trial. The jury found Dixon guilty of all charges and specifications, and the trial court sentenced him to a 21-year term of imprisonment. Dixon appeals. *Page 5 
 II {¶ 14} Dixon's First Assignment of Error is as follows:
 {¶ 15} "THE TRIAL COURT ERRED, ABUSED ITS DISCRETION AND VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHTS WHEN IT SENTENCED MR. DIXON TO CONSECUTIVE MAXIMUM SENTENCES."
 {¶ 16} In his First Assignment of Error, Dixon insists that pursuant to the Ohio Supreme Court's decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, in which the Court found unconstitutional portions of Ohio's sentencing statutes, trial courts no longer have the discretion to impose consecutive prison sentences. Because Dixon's argument directly conflicts with the specific language of Foster, his First Assignment of Error fails.
 {¶ 17} The Foster Court held that "Blakely-offending" portions of the statutes were severable from the rest of the sentencing scheme.Foster, supra, at ¶ 96, referring to Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531. Applicable to the instant case, the Court found that R.C. § 2929.14(E) violated Blakely only to the extent that the statute required judicial fact-finding to support consecutive sentences. The Court specifically addressed the issue of consecutive sentences imposed post-Foster when it stated: "After the severance, judicial fact finding is not required before imposition of consecutive prison terms." Foster, supra, at ¶ 99. Furthermore, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id., at paragraph 7 of the syllabus. Therefore, contrary to Dixon's claim, trial courts still have the discretion to impose consecutive prison sentences. *Page 6 
 {¶ 18} As Dixon's sentence was within the established statutory range, his non-minimum sentence is not contrary to law. Dixon's First Assignment of Error is overruled.
 III {¶ 19} Dixon's Third Assignment of Error is as follows:
 {¶ 20} "DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND HIS FUNDAMENTAL RIGHT TO TESTIFY ON HIS OWN BEHALF, WHICH RIGHT WAS UNLAWFULLY WAIVED BY COUNSEL."
 {¶ 21} In his Third Assignment of Error, Dixon contends that counsel was ineffective because he failed in a variety of ways to adequately prepare for trial. However, the record belies his claims. Because trial counsel's performance was not deficient, this Assignment of Error must be overruled.
 {¶ 22} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance. Id. The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. Id. Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time. State v. Cook (1992),65 Ohio St.3d 516, 524, 605 N.E.2d 70.
 {¶ 23} Even assuming that counsel's performance was ineffective, the defendant must still show that the ineffectiveness adversely impacted the judgment. State v. Bradley (1989), *Page 7 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
 {¶ 24} Dixon was represented by an experienced criminal defense attorney. Counsel stated that he had taken a personal interest in Dixon's case. Counsel, in furtherance of his defense of Dixon: filed two motions to suppress and a liminal motion; met with Dixon on numerous occasions; reviewed all of Dixon's correspondence (amounting to at least thirty pages); visited the crime scene; reviewed video of the motion to suppress hearing; reviewed police reports numerous times; hired a private investigator who interviewed witnesses; and prepared his voir dire, cross examinations, and outlined his closing argument in advance of trial. Counsel stated that there was nothing more he could have done.
 {¶ 25} Furthermore, counsel explained why Dixon's ideas for his defense would have at best been fruitless, and at worst could have been detrimental to the defense. For example, counsel stated that in this case a motion for a change in venue would have been a waste of time, and the trial court agreed. He also pointed out even if other individuals played a part in planning the crimes, it would not negate Dixon's own substantial role.
 {¶ 26} Dixon claims that counsel failed to interview witnesses that would have benefitted his defense, but he does not identify who these witnesses are. Similarly, Dixon insists that counsel should have subpoenaed witnesses to testify for the defense. However, the record reflects that less than a week before the trial, Dixon was in agreement with counsel's advice not to call witnesses. In any event, the only witness Dixon identifies as one that counsel should have called was his probation officer. Counsel explained that he did not wish to call this witness, because he wanted to avoid the jury learning of Dixon's prior *Page 8 
Aggravated Robbery conviction. Moreover, Dixon cannot demonstrate prejudice because the State did, in fact, call this witness, and defense counsel had the opportunity to question him at that time.
 {¶ 27} Dixon also contends that counsel should have authenticated airline and government documents that purportedly would have proven that Dixon was out of the country on the date in question. Because Detective Ward testified that he had attempted without success to verify the documents, it is unlikely that defense counsel would have been successful. In any event, the documents were admitted into evidence, but they showed dates months before and after the crimes occurred, not during or near the time of the crimes.
 {¶ 28} Finally, Dixon posits that counsel denied him the right to testify on his own behalf. Nevertheless, Dixon concedes that the record does not support this claim. As there is no evidence to support Dixon's claim that counsel prohibited him from testifying, we must presume that his decision not to testify was knowingly and voluntarily made.
 {¶ 29} Dixon's Third Assignment of Error is overruled.
 IV {¶ 30} Dixon's Second Assignment of Error is as follows:
 {¶ 31} "THE TRIAL COURT ERRED, ABUSED ITS DISCRETION AND VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHTS, AND DENIED HIM HIS CONSTITUTIONAL RIGHT TO COUNSEL."
 {¶ 32} Here Dixon argues that the trial court's decision to deny his request, made on the first day of trial, to replace his retained counsel served to deny him of his constitutional right to counsel. A defendant's right to retain counsel of his own choosing is not an unlimited *Page 9 
right. State v. Perkins, Montgomery App. No. 21515, 2007-Ohio-136, ¶ 18. Instead, "when considering a motion for . . . new counsel, a trial court must balance`any potential prejudice to a defendant against concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." Id. "Accordingly, a reviewing court will not reverse a trial court's decision to deny a motion for. . . . new counsel absent an abuse of discretion." Id., at ]}19. When considering such a motion, a trial court should consider the length of the requested continuance; any prior continuances; inconvenience to the parties, witnesses, opposing counsel, and the court; reasons for the delay; whether the defendant contributed to the delay; and any other relevant factors. Id. Because there is no evidence that the trial court's denial of Dixon's request was the product of "perversity of will, passion, prejudice, partiality, or moral delinquency", that decision was not an abuse of discretion. Id.
 {¶ 33} In support of his last-minute request for a continuance in order to retain new counsel, Dixon claims that defense counsel failed to fully investigate his case and prepare for trial. However, we have already rejected this argument as detailed above in response to Dixon's Third Assignment of Error. To the extent that Dixon maintains that counsel refused to follow Dixon's preferred strategy, we note that in counsel's professional opinion, that strategy would have backfired. We will not second-guess the trial strategy decisions of defense counsel.State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 156.
 {¶ 34} As further evidence of his displeasure with his retained counsel, Dixon points to his numerous pro se motions. It is notable that those motions were filed more than two months before trial. Had Dixon been so disappointed with counsel's representation, he should have sought new counsel at that time.
 {¶ 35} Additionally, we must consider the fact that Dixon's last-minute request would *Page 10 
have greatly inconvenienced the trial court, along with the State, the prospective jurors, and the numerous witnesses, some of whom had been transported from prison in order to testify.
 {¶ 36} For these reasons, we find that the trial court did not abuse its discretion in denying Dixon's last-minute request for a continuance in order to retain new counsel. Dixon's Second Assignment of Error is overruled.
 V {¶ 37} Dixon's Fourth Assignment of Error is as follows:
 {¶ 38} "THE TRIAL COURT ERRED IN FAILING TO DECLARE A MISTRIAL AND DEFENDANT WAS DENIED HIS CONSTITUTIONAL DUE PROCESS RIGHT TO A FAIR TRIAL WHEN THE JURY WAS EXPOSED TO EVIDENCE OF PRIOR BAD ACTS SEVERAL TIMES DURING THE TRIAL IN VIOLATION OF EVIDENCE RULE 404."
 {¶ 39} Dixon next maintains that he was denied a fair trial because the jury heard repeated references to prior bad acts, including a prior incarceration, during the course of the trial. He insists that as a result, the trial court should have granted his motions for a mistrial. Contrary to Dixon's claim, the record shows that the jury heard only one reference to Dixon's prior bad acts, and the trial court not only struck that reference from the record but also gave the jury a curative instruction. Therefore, the trial court did not abuse its discretion in denying his motions.
 {¶ 40} The decision whether to grant a mistrial lies within the sound discretion of the trial court. State v. Brown, 100 Ohio St.3d 51,2003-Ohio-5059, ]}42, citation omitted. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."State v. Adams (1980), 62 *Page 11 
Ohio St.2d 151, 177, 404 N.E.2d 144.
 {¶ 41} Dixon moved twice for a mistrial, once during the testimony of Erica White and once during the testimony of Devon Schultz. White's testimony of Dixon's statements about robbing people being the only way for him to get money, were made in response to the prosecutor's request for her to clarify what she heard Dixon say in regard to the robbery at issue. Thus, her testimony did not include evidence of Dixon's prior bad acts.
 {¶ 42} On the other hand, Schultz did refer to prior bad acts when she stated, "They've, uh . . . numerous occasions they'd broken into houses and . . ." Notably, the question to which Schultz was responding did not call for a response along these lines, and there is nothing in the record to suggest that the State connived with Schultz to elicit this testimony. Defense counsel objected immediately, and the court held a sidebar during which counsel moved again for a mistrial. Although the court overruled the motion, the court did strike the comment from the record and instructed the jury to disregard it. The jury is presumed to have followed the court's instruction. State v. Fears,86 Ohio St.3d 329, 334, 1999-Ohio-111. There is no indication in the record that this decision was unreasonable, arbitrary, or unconscionable.
 {¶ 43} As for Dixon's claim that the jury heard testimony of his prior incarceration, he is mistaken. The transcript page to which Dixon refers contains Schultz's statement in response to defense counsel's question that she had been incarcerated. There is no reference to Dixon's prior incarceration.
 {¶ 44} Finally, Dixon's insistence that he was denied a fair trial because the trial court refused to redact references to his involvement with international drug dealers from the statement that he wrote when interviewed by Detective Ward lacks merit. The admission of *Page 12 
evidence, like the denial of a motion for mistrial, is a matter left to the discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 510 N. E.2d 343, paragraph 1 of the syllabus. A review of Dixon's written statement shows that he did not admit to any prior bad acts. To the contrary, according to his statement, he tipped off authorities in Belize to the location of a large quantity of drugs, leading to an historic drug bust. He offered to work with police; he never implicated his own involvement in any illegal act. Thus, the trial court's decision to admit Dixon's statement in its entirety was not an abuse of discretion.
 {¶ 45} Dixon's Fourth Assignment of Error is overruled.
 VI {¶ 46} Dixon's Fifth Assignment of Error is as follows:
 {¶ 47} "THE VERDICT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 48} Finally, Dixon insists that the State failed to prove his complicity in the offenses because the State's witnesses lacked credibility. Therefore, he concludes that his convictions are against the manifest weight of the evidence. The State presented strong evidence that Dixon not only was present during the commission of the crimes, but also was instrumental in planning and carrying them out.
 {¶ 49} When reviewing a judgment under a manifest weight standard of review "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power *Page 13 
to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 50} The State's evidence proved that Dixon planned to rob a Dayton family and that he gathered Devon Schultz, Angela Walton, and Peter Roach to help carry out his plan. Dixon bought clothing and jewelry from a thrift store for Schultz to wear, and he told her how to lie in order to gain access to the Harbor's home. He bought ammunition and loaded a gun that he taped to Schultz's leg to use after she entered the house. Dixon and Roach waited outside the house, intending to follow Schultz into the house in order to steal money that Dixon believed was kept in a closet. Dixon told Walton to drive them to the house and then wait in a nearby parking lot. Dixon gave Walton a walkie-talkie, so that he could tell her when to return to pick them up. In lying about her need to use the phone and in entering the home without invitation, Schultz gained entry to the home both by stealth and deception. Once inside the home, Schultz pointed the gun at Shoshana, and ultimately shot Shoshana twice.
 {¶ 51} On the strength of this evidence, the State proved that Dixon was complicit in the crimes of Aggravated Burglary, Aggravated Robbery, and Felonious Assault, including their attendant firearm specifications. The majority of the State's witnesses did not know Dixon and had no motive to want him to be wrongly convicted. The co-defendants who testified about Dixon's role in the crimes had no incentive to lie, since they had already been convicted and sentenced for their parts in the crimes, and there is nothing in the record to suggest that their specific testimony implicating Dixon was obtained as a result of a plea bargain with the State. Furthermore, Walton and Schultz explained their initial reluctance to discuss the extent of Dixon's participation because they feared him. *Page 14 
 {¶ 52} We conclude that the jury did not lose its way in finding the State's witnesses to be credible and did not create a manifest miscarriage of justice by finding Dixon guilty of the crimes with which he was charged. Dixon's Fifth Assignment of Error is overruled.
 VII {¶ 53} Having overruled all five of Dixon's Assignments of Error, the judgment of the trial court is affirmed.
 {¶ 54} IT IS SO ORDERED.
WOLFF, P.J., and GRADY, J., concur.
Copies mailed to: Mathias H. Heck, Jr. R. Lynn Nothstine Dawn S. Garrett Hon. A. J. Wagner *Page 1