OPINION
{¶ 1} B.L., a juvenile, was found to be a delinquent child by the Van Wert County Court of Common Pleas, Juvenile Division, after he admitted allegations that he had committed an act which, if committed by an adult, would constitute rape, a first degree felony. Because B.L. was a permanent resident of Miami County, the court *Page 2 
transferred the case to Miami County for disposition. On May 1, 2007, the Miami County Court of Common Pleas, Juvenile Division, imposed a suspended commitment to the Department of Youth Services ("DYS"), probation, and a $300 fine, and it placed B.L. at the West Central Juvenile Rehabilitation Center ("West Central"). After a review hearing on May 22, 2007, the trial court terminated his placement at West Central and committed him to DYS.
 {¶ 2} B.L. appealed from the dispositional rulings. B.L. was appointed appellate counsel, who filed a brief pursuant to Anders v.California (1967), 386. U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. Upon an independent review of the record, we determined that at least one issue had arguable merit for appeal, namely whether B.L.'s trial counsel was ineffective for failing to move to suppress his statements to the police. We appointed new counsel for B.L., who raises one assignment of error, as follows:
 {¶ 3} I. "APPELLANT WAS PREJUDICED BY THE DENIAL OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF HIS RIGHTS UNDER THESIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 4} "In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance. Id. The adequacy of counsel's *Page 3 
performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. Id. Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time. State v. Cook (1992),65 Ohio St.3d 516, 524, 605 N.E.2d 70.
 {¶ 5} "Even assuming that counsel's performance was ineffective, the defendant must still show that the ineffectiveness adversely impacted the judgment. State v. Bradley (1989), 42 Ohio St.3d 136, 142,538 N.E.2d 373." State v. Dixon, Montgomery App. No. 21823, 2008-Ohio-755, ¶ 22-23. "When a defendant pleads guilty, a claim of ineffective assistance of counsel may be grounds for vacating his plea only to the extent that counsel's ineffectiveness makes the plea less than knowing and voluntary. A defendant must show a strong probability that but for trial counsel's deficient performance, the defendant would not have pled guilty." (Citations omitted.) State v. Milbrandt, Champaign App. No. 2007-CA-3, 2008-Ohio-761, ¶ 9.
 {¶ 6} B.L. asserts that his trial counsel rendered ineffective assistance by failing to file a motion to suppress the oral and written statements that he made to a sheriff's deputy. B.L. states that he was in custody at the time of the interrogation and that he was questioned without being informed of his Miranda rights. B.L. further states that his written statement, which was obtained after his oral statement, is inadmissible pursuant to Missouri v. Seibert (2004), 542 U.S. 600,124 S.Ct. 2601, 159 L.E.2d 643. B.L. claims that he would not have admitted to the charge of rape and would have insisted on a trial had his trial counsel filed and prevailed on a motion to suppress.
 {¶ 7} The main evidence in the record that is relevant to the assignment of *Page 4 
error is the narrative summary portion of the Ohio Uniform Incident Report prepared by Van Wert County Deputy Sheriff R.J. Averesch. That summary states, in pertinent part:
 {¶ 8} "I was dispatched to a sex offense at 20322 St. Rt. 116, Venedocia, OH, the Brad Fryer residence.
 {¶ 9} "When I arrived Pamela Reagan and Kim Mullins from the Marsh Foundation School were there.
 {¶ 10} "I made contact with Brad Fryer and he told me that [D.B.] told him [B.L.] had sex with him. Brad told me [D.B.] and [B.L.] are foster children that had been placed in his house for care. * * *
 {¶ 11} "I had dispatch call DHS to let them know about this and request one of them meet me at the Sheriffs Office. Dispatch advised me to call Sandy of DHS, who advised me that Miami County DHS would have to do the investigation for them because they are from Miami County. I had Pamela and Kim bring [D.B.] to the Sheriffs Office and had Brad bring [B.L.] to the Sheriffs Office.
 {¶ 12} "I first spoke with [D.B.]. [D.B.] told me [B.L.] had sex with him 4 or 5 times. * * *
 {¶ 13} "I spoke to [B.L.]. I asked [B.L.] if he knows why he is here? [B.L.] said no. I told him [D.B.] said that he had had sex with him. [B.L.] said yes but they both wanted to do it. I told [B.L.] to tell me what happened. [B.L.] said they did have sex. He said they did it in the woods by the house. [B.L.] said they sucked each other off. [B.L.] said they butt fucked each other. [B.L.] said they only did it 2 times. I asked [B.L.] whose idea was it to have sex? [B.L.] told me it was his, he brought it up. [B.L.] *Page 5 
said they would talk about it outside of the house. [B.L.] said they both wanted to do it (have sex).
 {¶ 14} "I did not read [B.L.] his rights. Pamela Reagan and Kim Mullins were in the room when I spoke to both [D.B.] and [B.L.]. Pamela and Kim took [B.L.] to the Marsh Hall to stay for the night. Brad took [D.B.] back to his house for the night.
 {¶ 15} "Pamela told me [D.B.] has ADHD and is probably the worst she has ever seen and has no concept of time. Miami County DJFS is supposed to be up here to talk to [B.L.] according to Pamela."
 {¶ 16} According to the transcripts of dispositional hearings, the Marsh Foundation is a residential treatment facility which provides, among other services, treatment services for juvenile sex offenders. B.L. received treatment at the Marsh Foundation for more than two years before entering foster care and committing this offense.
 {¶ 17} Deputy Averesch's narrative supplement specifically states that B.L. was not advised of Miranda rights. The right to Miranda warnings are grounded in the Fifth Amendment's prohibition against compelled self-incrimination. Moran v. Burbine (1986), 475 U.S. 412, 420,106 S.Ct. 1135, 89 L.E2d 410. It is well-established, however, that the police are not required to administer Miranda warnings to every individual they question. State v. Biros, 78 Ohio St.3d 426, 440,1997-Ohio-204, 678 N.E.2d 891. Rather, only custodial interrogations trigger the need for Miranda warnings. Id., citing Oregon v.Mathiason (1977), 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714;State v. Mason, 82 Ohio St.3d 144, 153, 1998-Ohio-370, 694 N.E.2d 932,946. Accordingly, the pivotal question is whether B.L. was in custody at the time *Page 6 
he was questioned.
 {¶ 18} "The Miranda custody inquiry is an objective test."Yarborough v. Alvarado (2004), 541 U.S. 652, 667, 124 S.Ct. 2140,158 L.Ed.2d 938. "An individual is in custody when there has been a formal arrest or a restraint of freedom of movement such that a reasonable man would believe that he is under arrest." State v. Wenzler, Greene App. No. 2003-CA-16, 2004-Ohio-1811, ¶ 15; State v. Keggan, Greene App. No. 2006-CA-9, 2006-Ohio-6663, ¶ 30.
 {¶ 19} In State v. Estepp (Nov. 26, 1997), Montgomery App. No. 16279, we identified ten factors to consider in determining whether a defendant was in custody:
 {¶ 20} "1) What was the location where the questioning took place — i.e., was the defendant comfortable and in a place a person would normally feel free to leave? For example, the defendant might be at home as opposed to being in the more restrictive environment of a police station;
 {¶ 21} "2) Was the defendant a suspect at the time the interview began (bearing in mind that Miranda warnings are not required simply because the investigation has focused);
 {¶ 22} "3) Was the defendant's freedom to leave restricted in any way;
 {¶ 23} "4) Was the defendant handcuffed or told he was under arrest;
 {¶ 24} "5) Were threats were [sic] made during the interrogation;
 {¶ 25} "6) Was the defendant physically intimidated during the interrogation;
 {¶ 26} "7) Did the police verbally dominate the interrogation;
 {¶ 27} "8) What was the defendant's purpose for being at the place where questioning took place? For example, the defendant might be at a hospital for *Page 7 
treatment instead of being brought to the location for questioning;
 {¶ 28} "9) Were neutral parties present at any point during the questioning;
 {¶ 29} "10) Did police take any action to overpower, trick, or coerce the defendant into making a statement."
 {¶ 30} Applying the factors to the limited record before us, the record does not support a conclusion that B.L. was in custody when he was questioned by Deputy Averesch. Although B.L. was questioned at the Sheriffs Office due to allegations made by D.B., he was brought to the Sheriffs Office by his foster parent. There is no evidence that he was placed in handcuffs or otherwise brought involuntarily. B.L. was not alone with the deputy during the interview at the Sheriffs Office; Pamela Reagan and Kim Mullins of the Marsh Foundation, a facility where B.L. had resided for more than two years, were present. There is no indication in the record that Averesch acted in an intimidating or coercive manner. B.L. was not told that he was under arrest, and he was not arrested at the conclusion of the interview. Rather, B.L. returned to the Marsh Foundation facility with Reagan and Mullins. Although B.L. argues that he was not told that he was free to leave or that he was not under arrest, the deputy's failure to inform him that he could leave does not necessarily render him "in custody."
 {¶ 31} We recently recognized that the United States Supreme Court has not definitively ruled on whether a suspect's youth is part of the objective Miranda custody analysis. In re R.H., Montgomery App. No. 22352, 2008-Ohio-773, ¶ 19, citing Alvarado, supra. In In re R.H., we took the defendant's young age into account, stating that "[i]t is virtually impossible to conclude that a child of such tender years, 11, would appreciate the fact that he was simply free to leave and terminate the interview." Id. *Page 8 
at ¶ 21. In this case, however, B.L. was fifteen-years-old at the time of the interview. Although still a few years from adulthood, the record does not suggest that B.L. was "of such tender years" that he was unable to appreciate that he was not under arrest.
 {¶ 32} Because the record does not support the conclusion that B.L. was in custody at the time that he made the oral and written statements, the deputy was not required to provide Miranda warnings. Consequently, we find no basis to conclude that B.L.'s statements would have been suppressed had his trial counsel filed a motion to suppress. In light of that conclusion, the record likewise does not establish that B.L.'s counsel rendered ineffective assistance.
 {¶ 33} The assignment of error is overruled.
 {¶ 34} The judgment of the trial court will be affirmed.
 BROGAN, J. and DONOVAN, J., concur *Page 1