[Cite as *State v. Dixon*, 2016-Ohio-5538.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 26873 |
| | : | |
| v. | : | T.C. NO. 05CR4213/4 |
| | : | |
| WILLIAM DIXON | : | (Criminal appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ___26th___ day of ____August____, 2016.

. . . . . . . . . .

MICHELE D. PHIPPS, Atty, Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

WILLIAM DIXON, Inmate #529-169, Toledo Correctional Institution, 2001 East Central Avenue, Toledo, Ohio 43608
    Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} Defendant-appellant William Dixon appeals from a single decision of the Montgomery County Court of Common Pleas, Criminal Division, denying the following five motions he filed: 1) "Motion of Notice of Brief;" 2) "Motion to Submit Brief and Three

Appendices;" 3) "Motion to Seal Records and Proceedings and Motion for New Trial;" 4) "Motion for Summary Judgment;" and 5) "Motion for New Trial for the New Evidence." Dixon filed a timely notice of appeal with this Court on October 21, 2015.

{¶ 2} We set forth the history of the case in *State v. Dixon*, 2d Dist. Montgomery No. 21823, 2008-Ohio-755 (hereinafter "*Dixon I*") and repeat it herein in pertinent part:

> In June 2005, Shoshana Harbor was living with her husband and son in a home on Lynnaway Drive in Dayton. While fixing dinner early one afternoon, Shoshana heard her front doorbell ring. At the door Shoshana found a young woman in her twenties, wearing a long black skirt and a white blouse. The woman, who was later identified as Devon Schultz, told Shoshana that her car was out of gas and asked to use the phone. Shoshana agreed, but she shut the door leaving Schultz on the front porch before heading to the kitchen to get the phone. As Shoshana returned to the front door, she was surprised to see Schultz standing in the front hallway. Schultz asked for the phone, which Shoshana gave her, and then Schultz put a gun to Shoshana's head.
>
> Seeing that Schultz was distracted, Shoshana tried to take the gun away from her. They fought briefly, during which time Schultz shot Shoshana in the left leg and in the left side of her chest. Nevertheless, Shoshana was able to push Schultz out the front door, and Schultz ran away. Shoshana also ran outside, screaming for help. Seeing two young men outside her house, she yelled to them for help. The two men, later identified as Dixon and Peter Roach, ran after Schultz.

After the getaway driver, Angela Walton, heard a commotion over the walkie talkie, she returned and picked up Schultz, but Dixon and Roach waved her on. Walton dropped Schultz off at a nearby drug store and returned to pick up Dixon and Roach.

Several neighbors and Shoshana's son, Solomon, saw various parts of the events. As the first police were arriving on the scene, they videotaped the getaway car on a camera in the cruiser. Witnesses were able to give police descriptions of the conspirators as well as the car.

After the failed robbery, Dixon, Schultz, and Walton fled to Arkansas. The women were arrested in Maryland in October 2005. Soon after, Roach was apprehended in Springfield, Ohio. Dixon was arrested in Arkansas in March 2006.

During the course of their investigation, police learned that Dixon had planned to rob the Harbors with the help of Devon Schultz, Angela Walton, and Peter Roach. Although Dixon did not know the Harbors, he believed that they kept several hundred thousand dollars in their home.

Dixon not only suggested the robbery, he was instrumental in planning it. He went to a thrift store, where he purchased the clothing and jewelry that Schultz wore. Dixon bought ammunition and loaded a gun that he then provided to Schultz. After Schultz dressed in the clothes that Dixon had purchased, he taped the gun to her leg. Dixon provided Walton with a walkie talkie in order to keep in contact with her. Dixon drew a map for the participants, showing them the neighborhood around the Harbor home, and

led them to the home the afternoon of the crimes.

Dixon and his conspirators were each indicted on one count each of Complicity to commit: Aggravated Robbery; Aggravated Burglary; and Felonious Assault. All charges carried firearm specifications. After the trial court overruled Dixon's two motions to suppress, Dixon filed numerous pro se motions, all of which the trial court overruled because he was represented by counsel. By the time of Dixon's trial, Schultz, Walton, and Roach had already pled guilty as charged and were serving their sentences. On the first day of Dixon's trial, Dixon sought leave of the trial court to replace his retained counsel. The trial court overruled the motion, and the case proceeded to trial. The jury found Dixon guilty of all charges and specifications, and the trial court sentenced him to a 21-year term of imprisonment. ***

*Id.* at ¶¶ 6-13.

**{¶ 3}** Dixon appealed, and we affirmed his conviction and sentence in *Dixon I*. While his direct appeal was pending, Dixon filed a petition for post-conviction relief pursuant to R.C. 2953.21. On July 27, 2009, the trial court issued a decision denying Dixon's petition for post-conviction relief. On appeal, we affirmed the trial court's decision denying Dixon's petition in *State v. Dixon*, 2d Dist. Montgomery No. 23592, 2010-Ohio-2635 (hereinafter "*Dixon II*").

**{¶ 4}** Thereafter, on July 7, 2015, Dixon filed a "Motion of Notice of Brief" and a "Motion to Submit Brief and Three Appendices." On July 23, 2015, Dixon filed a "Motion to Seal Records and Proceedings and Motion for New Trial." On July 24, 2015, Dixon

filed a "Motion for Summary Judgment." On September 17, 2015, Dixon filed a "Motion for New Trial for the New Evidence." The trial court overruled all of Dixon's motions in a single decision issued on October 10, 2015.

{¶ 5} It is from this judgment that Dixon now appeals.

{¶ 6} Initially, we note that Dixon raises four assignments of error. Because they are all interrelated, we will discuss them together as follows:

{¶ 7} "DIXON'S U.S.C.A. RIGHTS WERE VIOLATED BY DENIAL OF HAVING EFFECTIVE COUNSEL. INEFFECTIVE COUNSEL CLAIM."

{¶ 8} "DIXON'S U.S.C.A. RIGHTS WAS [sic] VIOLATED BY THE COURT'S ABUSE OF DISCRETION ON MULTIPLE ISSUES."

{¶ 9} "DIXON'S U.S.C.A. RIGHTS WAS [sic] VIOLATED BY THE LACK OF MEN'S [sic] REA ELEMENTS FOR AGGRAVATED ROBBERY. THE DENIAL OF COMPULSORY TIME TO GATHER WITNESSES, AND FAILURE TO NOTIFY DIXON OF ACCUSATION PROPERLY."

{¶ 10} "DIXON'S U.S.C.A. RIGHTS WAS [sic] VIOLATED BY PROSECUTORS [sic] MISCONDUCT UNDER EQUAL PROTECTION."

{¶ 11} In his first assignment, Dixon contends that he received ineffective assistance when his trial counsel failed to file a witness list, failed to talk to witnesses, and purportedly paid a private investigator to threaten witnesses. Dixon also argues that his trial counsel failed to file pertinent motions such as change of venue, witness reliability, and a motion to transfer the case to another judge.

{¶ 12} In his second assignment, Dixon argues that the trial court abused its discretion when it failed to have the case transferred to another judge, used an illegal

hate crime sentencing enhancement to impose a twenty-one year prison term, used facts to sentence him that were not heard by the jury, denied him the right to call certain witnesses and the right to fire his counsel and retain new counsel, improperly allowed the admission of other bad acts to be heard by the jury, and ignored coercion and witness tampering by the State.

{¶ 13} In his third assignment, Dixon argues that because his indictment omitted the necessary mens rea element for aggravated robbery, that defect constitutes a structural error that renders his conviction and sentence for aggravated robbery void. Dixon also contends that he was denied the right of "compulsory time" to gather witnesses and that the State failed to provide him notice of the hate crime specification that he was sentenced under.

{¶ 14} In his fourth assignment, Dixon claims that the State committed prosecutorial misconduct when it knowingly used perjured testimony to convict him and repeatedly referred to facts not heard by the jury in its closing argument. Lastly, Dixon argues that his conviction is based upon insufficient evidence, and there is no physical evidence linking him to the crime.

{¶ 15} Post-conviction relief is governed by R.C. 2953.21. The statute provides, in pertinent part, that:

> Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the

court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

R.C. 2953.21(A)(1)(a).

{¶ 16} "A post[-]conviction proceeding is not an appeal of a criminal conviction, but, rather, a collateral civil attack on the judgment." *State v. Steffen,* 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994). *See also State v. Gondor,* 112 Ohio St.3d 377, 2006–Ohio–6679, 860 N.E.2d 77, ¶ 48. To prevail on a petition for post-conviction relief, the defendant must establish a violation of his constitutional rights which renders the judgment of conviction void or voidable. R.C. 2953.21.

{¶ 17} We review the trial court's denial of Dixon's petition for an abuse of discretion. *Gondor* at ¶ 52. As the Supreme Court of Ohio determined:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.

*AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,*

50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 18} In *State v. Goldwire,* 2d Dist. Montgomery No. 20838, 2005–Ohio–5784, we held the following:

"The most significant restriction on Ohio's statutory procedure for post-conviction relief is that the doctrine of res judicata requires that the claim presented in support of the petition represent error supported by evidence outside the record generated by the direct criminal proceedings." *State v. Monroe,* Franklin App. No. 04AP–658, 2005–Ohio–5242. "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *State v. Perry* (1967), 10 Ohio St.2d 175, 180, 226 N.E.2d 104. "Our statutes do not contemplate re-litigation of those claims in post-conviction proceedings where there are no allegations to show that they could not have been fully adjudicated by the judgment of conviction and an appeal therefrom." *Id.* "To overcome the res judicata bar, the petitioner must produce new evidence that renders the judgment void or voidable, and show that he could not have appealed the claim based upon information contained in the original record." *State v. Aldridge* (1997), [120] Ohio App.3d 122, 151, 697 N.E.2d 228. "Res judicata also implicitly bars a petitioner from 'repackaging' evidence or issues which either were, or could

have been, raised in the context of the petitioner's trial or direct appeal."

*Monroe.*

*Id.,* at ¶ 11.

{¶ **19**} Initially, we note that Dixon failed to provide a transcript of the proceedings below, pursuant to App. R. 9(B); a statement of the evidence under App. R. 9(C); or an agreed statement of the case under App. R. 9(D). It is the duty of the appellant to order from the court reporter a transcript of the proceedings or part thereof that the appellant considers necessary for inclusion in the record, and to file a copy of the order with the clerk. App.R. 9(B). Dixon cites extensively to the transcript of his trial in his appellate brief; however, he has not provided us with a copy of said transcript. These failures prevent us from effectively reviewing several of the evidentiary issues argued by Dixon regarding the charged offenses. *See Gevedon v. Gevedon,* 167 Ohio App.3d 450, 2006–Ohio–3195, 855 N.E. 2d 548 (2d Dist.), at ¶ 21. Moreover, because the record before us is insufficient to allow us to examine several of the asserted errors, we must presume the regularity of the proceedings in the trial court. *See In re J.W.,* 2d Dist. Greene No. 2006 CA 115, 2007–Ohio–2598, at ¶ 7.

{¶ **20**} Additionally, Dixon's conviction and sentence were affirmed after his direct appeal in *Dixon I.* We also note that Dixon's case has already been the subject of one petition for post-conviction relief which was denied by the trial court and subsequently affirmed on appeal in *Dixon II.* Further, R.C. 2953.21(J) provides:

Subject to the appeal of a sentence for a felony that is authorized by section 2953.08 of the Revised Code, the remedy set forth in this section is *the exclusive remedy* by which a person may bring a collateral challenge

to the validity of a conviction or sentence in a criminal case * * *. (Emphasis added). * * *

{¶ 21} R.C. 2953.21(A)(2) provides:

Except as otherwise provided in section 2953.23 of the Revised Code, a petition under division (A)(1) of this section shall be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction * * *.

{¶ 22} R.C. 2953.23 provides:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court *may not* entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for

constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted ***.

***

{¶ 23} A trial court lacks jurisdiction to hear an untimely filed petition for post-conviction relief if the two conditions of R.C. § 2953.23(A)(1) are not satisfied. *State v. Melhado,* 10th Dist. Franklin No. 05AP–272, 2006–Ohio–641.   All five of Dixon's motions were  effectively petitions for post-conviction relief.   Dixon's trial transcript was filed herein in April of 2007, and his petition for post-conviction relief was not filed until July and September of 2015, rendering the petition clearly untimely.   It should be noted that Dixon has made no assertion that the U.S. Supreme Court has announced any new state or federal right that would apply retroactively to him.   Thus, we need only address whether Dixon affirmatively demonstrated that he was unavoidably prevented from discovery of the facts upon which he must rely to present a meritorious claim for relief. R.C. 2953.23(A)(1)(a).

{¶ 24} With respect to Dixon's first, third, and fourth assignments of error, we thoroughly addressed identical arguments in *Dixon II.*   In that opinion, we found that Dixon could not collaterally attack his conviction and that his arguments regarding the alleged missing mens rea element in his indictment, ineffective assistance of counsel, and prosecutorial misconduct were barred by res judicata. *Id.*  Accordingly, insofar as Dixon raises the same arguments in the instant appeal, we have already addressed these issues and found that they lack merit. *Id.*   Thus, we need not address the same arguments again in the instant appeal because they are clearly barred by the doctrine of res judicata.

{¶ 25} Dixon also argues that any records relating to his case should be sealed because there have been three attempts on his life while he has been incarcerated. Other than his bare assertions, Dixon has failed to provide any evidence at all to substantiate his claim. Accordingly, his unsupported allegations cannot form the basis for a meritorious claim for relief.

{¶ 26} Lastly, Dixon contends that he is entitled to a new trial based upon the ground of newly discovered evidence.

{¶ 27} Crim.R. 33 provides in relevant part as follows:

A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

***

(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

***

Motions for new trial on account of newly discovered evidence shall be

filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶ 28} As this Court has previously noted:

* * * To seek a new trial based on new evidence more than 120 days after the verdict, a petitioner "must first file a motion for leave, showing by 'clear and convincing proof that he has been unavoidably prevented from filing a motion in a timely fashion.'" [*State v. Parker,* 178 Ohio App.3d 574, 577, 2008–Ohio–5178], 899 N.E.2d 183 [(2d Dist.)], quoting *State v. Morgan,* Shelby App. No. 17–05–26, 2006–Ohio–145. " '[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.'" *Id.,* quoting *State v. Walden* (1984), 19 Ohio App.3d 141, 145–146, 483 N.E.2d 859.

*State v. Wilson,* 2d Dist. Montgomery No. 23247, 2009–Ohio–7035, ¶ 8.

{¶ 29} "We review a trial court's ruling on a Crim.R. 33 motion for an abuse of discretion. *State v. McCoy,* 2d Dist. Montgomery No. 21032, 2006–Ohio–1137, ¶

8." *State v. Thompson,* 2d Dist. Montgomery No. 25016, 2012–Ohio–4862, ¶ 7.

{¶ 30} Dixon was convicted in 2006. Dixon did not file his motions for new trial until July and September of 2015, which is clearly outside the 120–day limit set forth in Crim.R. 33(A)(6). Thus, Dixon was required to establish by clear and convincing evidence that he was unavoidably prevented from discovering the new evidence upon which he relies. *State v. Parker,* 178 Ohio App.3d 574, 2008–Ohio–5178, 899 N.E.2d 183, ¶ 17 (2d Dist.).

{¶ 31} Dixon argues that he has newly-discovered evidence in the form of affidavits from two jurors from his original trial in 2006. Both affidavits, which contain the same boilerplate language, purport to confirm that Dixon was in Belize on or about the time of the offense. The purported jurors' affidavits regarding Dixon's Belize trip do not provide an alibi for him because the instant offenses were committed on June 24, 2005.[1] Accordingly, the affidavits cannot form the basis of a meritorious claim for relief. Upon review, we conclude that Dixon has failed to establish that he was unavoidably prevented from the discovery of new evidence upon which he relies to support his motions for new trial.

{¶ 32} Dixon also makes many claims regarding the existence of a conspiracy between the State, the trial judge who sentenced him in 2006, the Freemasons, a drug cartel in Belize, and a man named Tom Biondi. Dixon alleges that all of these individuals and entities conspired together to manufacture evidence in order to wrongfully convict

---

[1] As noted by the trial court in its decision denying the petition for post-conviction relief, Dixon mailed a copy of his "Appendix C" to five purported jury members and the victim's family. The trial court further noted that included in "Appendix C" is a purported copy of Dixon's airline ticket for travel from Columbus, Ohio, to Houston, Texas, to Belize City, Belize on April 20, 2005, and the return trip via the same airports on June 3, 2005.

him and have him incarcerated for offenses of which he claims he is innocent. Simply put, Dixon has provided no evidence, other than his bare assertions, in order to substantiate his claims in this regard.

{¶ 33} Dixon's assignments of error are overruled.

{¶ 34} All of Dixon's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Michele D. Phipps
William Dixon
Hon. Steven K. Dankof