[Cite as *State v. Montgomery*, 2016-Ohio-7527.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-15-1282

    Appellee                                 Trial Court No. CR0198605450

v.

William T. Montgomery                      **DECISION AND JUDGMENT**

    Appellant                               Decided:  October 28, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, David F. Cooper
and Frank H. Spryszak, Assistant Prosecuting Attorneys, for appellee.

John Q. Lewis and Jon W. Oebker, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} Defendant-appellant, William T. Montgomery, appeals the October 1, 2015

judgment of the Lucas County Court of Common Pleas, denying his motion for leave to file

a motion for new trial and granting the state of Ohio's motion to dismiss.  For the reasons

that follow, we affirm the trial court judgment.

## I.  Background

### A.  Cynthia Tincher and Debra Ogle are murdered.

{¶ 2} This case has been before us a number of times, and we fully recited the facts in *State v. Montgomery*, 6th Dist. Lucas No. L-98-1026, 1999 Ohio App. LEXIS 266, *1- 3 (Feb. 5, 1999).  We briefly restate them here.

{¶ 3} On the morning of March 8, 1986, the body of Cynthia Tincher was found in her car near the intersection of Angola and Wenz Roads in Toledo, Ohio.  She died from a gunshot wound to the head.  That same day, her roommate, Debra Ogle, failed to show up for work.  Police searched for her after finding Tincher's body, and discovered that Tincher and Ogle's apartment door was unlocked.  By the end of the day, they concluded that Ogle was missing.  On March 9, 1986, her abandoned car was found with the key in the ignition.  Her purse was in the car.

{¶ 4} On March 11, 1986, police received a tip from a jailhouse informant indicating that a man named Glover Heard had bragged to him that he witnessed the murder of two white girls.  Police found Heard and questioned him.  Heard offered the name of an alibi witness, Bruce Ellis, who in turn implicated William Montgomery.  Heard was arrested and charged with Tincher's murder, and he was transferred to the Lucas County jail.  Police executed a search warrant of Heard's residence at approximately 1:30 a.m. on March 12, 1986, and found Ogle's wallet, driver's license, and credit cards.

2.

{¶ 5} In the meantime, police looked for Montgomery. On the afternoon of March 12, 1986, they went to his uncle's house and Montgomery agreed to meet them there. Montgomery told police that he knew they were looking for him and that he wanted to discuss the homicide. He was arrested on an outstanding forgery warrant and brought in for questioning.

{¶ 6} During the interview, Montgomery claimed that in the early morning hours of March 8, 1986, after a night of drinking, he gave his gun, a Bersa .380-caliber semi-automatic pistol, to Heard so he could protect himself on his walk home. He said that Heard later returned the gun with an empty six-round clip and told him that he shot and killed both Tincher and Ogle. Montgomery maintained that Heard did not disclose to him the location of Ogle's body.

{¶ 7} Following additional questioning that afternoon, Montgomery changed his statement, this time admitting that he and Heard had taken a taxi to Tincher and Ogle's Hill Avenue apartment. He said they asked Ogle for a ride home and she agreed to drive them after she finished getting ready for work. Montgomery claimed that Ogle dropped him off at his apartment and Heard killed the women with Montgomery's gun. He said that Heard said he had to kill Tincher because she knew that Ogle had left with them and could tie them to Ogle.

{¶ 8} The police permitted Montgomery to make several phone calls to locate the gun. He spoke to his mother and told her where to find it, and she retrieved it and turned

3.

it over to police. Later that evening, police charged Montgomery with the aggravated murder of Tincher.

{¶ 9} Montgomery maintained that Heard killed the women, but he offered to take police to Ogle's body, claiming that Heard had driven him by the location. Montgomery rode in a patrol car and directed the police to a wooded area off of Hill Avenue. A field separated the woods and police began searching the area to the left of the field. Montgomery told the police sergeant who stayed in the patrol car with him that officers should search the area to the right of the field. They did and around 11:30 p.m., Ogle's body was recovered. Like Tincher, Ogle had been shot in the head. She suffered two additional gunshot wounds.

### B. Heard strikes a deal and Montgomery goes to trial.

{¶ 10} Montgomery and Heard were charged with the aggravated murders of Ogle and Tincher with three specifications for the death penalty. Heard, however, accepted a plea agreement whereby he entered a guilty plea to one count of complicity to murder in exchange for his testimony against Montgomery. The state also agreed to dismiss a pending charge for gross sexual imposition of a five-year-old child.

{¶ 11} Before trial, Heard offered a number of different stories about the events of March 8, 1986. At trial, he testified that he and Montgomery took a cab to Ogle and Tincher's apartment early in the morning on March 8, 1986. They asked Ogle for a ride to Montgomery's Airport Highway apartment, and she agreed. Ogle had to go to work,

4.

so she finished getting ready.  At some point Heard heard a female voice from a bedroom—presumably Tincher's.

{¶ 12} After getting ready for work, Montgomery and Heard left with Ogle and they drove around for a bit before Montgomery told her to stop at a field near her apartment.  He asked her to get out of the car.  She said she had to work and told Montgomery to stop playing around, but she ultimately complied.  They walked side-by-side across the field into the woods and Heard stayed in the car.  Heard saw Ogle in a "squat" position on the ground with Montgomery standing next to her.  Heard looked away and heard two shots fired.  He looked back and saw Ogle on the ground.

{¶ 13} Montgomery returned to the car and the two men drove to Ogle's apartment.  Montgomery picked up a gun from the floor of the car and told Heard to take the car and go home.  Heard drove Ogle's car to a location about a block from where he lived and abandoned the vehicle there.  He took Ogle's wallet and credit cards but left her purse and keys in the car.  Heard claimed that he asked Montgomery what happened and Montgomery told him that he did not want to know.

{¶ 14} The state's theory was that Ogle was shot first as part of a robbery, and Tincher was shot second because she could place Montgomery and Heard with Ogle.  The jury found Montgomery guilty of the murder of Ogle and the aggravated murder of Tincher.  It found that Tincher's murder was part of a course of conduct involving the purposeful killing of two or more persons, and the murder was committed while

5.

committing or attempting to commit aggravated robbery.  Montgomery was sentenced to death.  His execution is set for June 17, 2017.

### C.  We affirm Montgomery's conviction and deny his motion for delayed reconsideration.

{¶ 15} Montgomery appealed his conviction to this court, and we affirmed.  *State v. Montgomery*, 6th Dist. Lucas No. L-86-395, 1988 Ohio App. LEXIS 3297 (Aug. 12, 1988).  He then appealed to the Ohio Supreme Court which, too, affirmed.  *State v. Montgomery*, 61 Ohio St.3d 410, 575 N.E.2d 167 (1991).  The U.S. Supreme Court denied a petition for writ of certiorari on February 24, 1992.  *Montgomery v. Ohio*, 502 U.S. 1111, 117 L.Ed.2d 452, 112 S.Ct. 1215 (1992).

{¶ 16} Montgomery filed a motion for delayed reconsideration of our August 12, 1988 decision.  We found his motion not well-taken.  *State v. Montgomery*, 6th Dist. Lucas No. L-86-395, 1993 Ohio App. LEXIS 1294 (Mar. 3, 1993).  The Ohio Supreme Court affirmed.  *State v. Montgomery*, 67 Ohio St.3d 1485, 621 N.E.2d 407 (1993).

### D.  A public records request reveals an undisclosed police report and Montgomery petitions the court for postconviction relief.

{¶ 17} Approximately six years after his conviction, Montgomery learned via a public records request that police had received a report from high school classmates of Ogle, including a man named David Ingram, who claimed they saw her alive on March 12, 1986, at 1:30 a.m.  The report provided:

> PRO stated that he and several friends were at the Oak Hill
>
> apartments on Hill when they saw a Blue Ford Escort with Debbie Ogle

6.

driving around the complex. Later they again saw her as a passenger in same auto. Debbie Ogle waved to them as they knew her from Rogers High School. She was with white male with long side burns. She did not appear distressed.

{¶ 18} At that time, Ogle was still considered missing, and her car had been discovered abandoned in the vicinity of Heard's home.

{¶ 19} Montgomery filed a petition for postconviction relief in the trial court, which the trial court dismissed without giving Montgomery an opportunity to respond. Because of this, we reversed and remanded to the trial court. *State v. Montgomery*, 6th Dist. Lucas No. L-96-308, 1997 Ohio App. LEXIS 4699 (Oct. 24, 1997).

{¶ 20} Montgomery's petition contained 70 claims for relief. His fiftieth claim related to the alleged sighting of Ogle. Montgomery contended that by failing to disclose this information to him before trial, the state withheld exculpatory evidence. The trial court held, however, that this report, made in the course of the ongoing investigation before all of the facts had been pieced together, and in the face of the overwhelming evidence presented at trial that Ogle had been killed on March 8, 1986, did not undermine confidence in the jury's verdict. We affirmed. *State v. Montgomery,* 6th Dist. Lucas No. L-98-1026, 1999 Ohio App. LEXIS 266 (Feb. 5, 1999).

### E. Montgomery pursues relief in federal court.

{¶ 21} Montgomery next sought federal relief. He petitioned the U.S. District Court for the Northern District of Ohio for a writ of habeas corpus. Again, Montgomery

7.

raised numerous issues, and again, one of those issues involved the state's failure to turn over exculpatory evidence concerning the claim of Ogle's high school friends that they saw her alive on March 12, 1986. The federal district court found that the state's case against Montgomery "was not airtight," and that "it could have been undermined by sufficient contradictory evidence." *Montgomery v. Bagley*, 482 F.Supp.2d 919, 977 (N.D.Ohio 2007). While the court agreed that some evidence pointed to Montgomery, it observed that other evidence pointed to Heard. It found that "sufficient weaknesses exist in Heard's testimony, and therefore in the State's case, that could have been undermined by the withheld police report." *Id.* The court explained:

> For example, the State posited that Montgomery first killed Ogle for her car, and then killed Tincher afterward to eliminate the witness who had last seen Ogle alive. Heard testified that he saw Ogle lying dead on the ground on the morning of March 8, 1986. Yet the withheld police report indicates that David Ingram reported that he and several witnesses saw Ogle alive and that she waved to them in the early morning hours of March 12, 1986. The fact that the alleged first victim was seen alive four days after the alleged second victim was found dead directly contradicts Heard's testimony, the State's timeline of the murders, and the State's theory of Montgomery's motivation for killing Tincher. Furthermore, if the defense had received this report, it could have led to testimony by multiple people who could have corroborated Ingram's account. According to

8.

Ingram, he and the other witnesses were high school friends of Ogle, and therefore were in good positions to identify Ogle. Consequently, if a jury found this testimony credible, it would have severely undermined the State's theory of the case.

In addition, the State posited that robbery was the motivation for Ogle's murder, yet Ogle's car and wallet -- the fruits of the robbery --were found in Heard's possession, not Montgomery's. In fact, Heard admits that he took these items, and says that he was planning to take Ogle's car even if Montgomery had not told him to do so (according to Heard's version of the facts). *Id.*

{¶ 22} The court found that the state's failure to provide the defense with this report was material to the outcome of the trial, and it granted Montgomery's petition with instructions that Montgomery's conviction for aggravated murder be set aside, or that he be given another trial. *Id.* at 1002.

{¶ 23} The state appealed the district court ruling to the Sixth Circuit Court of Appeals. *Montgomery v. Bagley*, 581 F.3d 440 (6th Cir.2009). The appeals court noted that the local newspaper ran a story about the district court ruling, and news reached three of the people who had reported seeing Ogle on March 12, 1986. Each retracted their statement and explained that it had been Ogle's sister that they saw that night—not Ogle. They signed affidavits to that effect and the state submitted those affidavits to the trial court along with a motion to reconsider. The district court denied the motion to

9.

reconsider, reasoning that the affidavits did not constitute newly discovered evidence for purposes of Fed.R.Civ.P. 59(e). The Sixth Circuit, in a two-to-one decision, concluded that the district court properly refused to consider the affidavits, and it affirmed the district court decision granting the petition for writ of habeas corpus.

{¶ 24} A majority of the judges of the Sixth Circuit Court of Appeals voted to rehear the case en banc. *Montgomery v. Bagley*, 6th Cir. Nos. 07-3882/3893, 2010 U.S. App. LEXIS 1583 (Jan. 21, 2010). A divided court reversed the district court's issuance of the writ of habeas corpus. *Montgomery v. Bobby*, 654 F.3d 668 (6th Cir.2011).

{¶ 25} The majority agreed with this court's conclusion that the undisclosed police report was not material to the outcome of Montgomery's trial. It observed that the evidence at trial strongly implicated Montgomery as the shooter. While it recognized that viewed alone, the report indicating that Ogle was seen on March 12, 1986, may have cast doubt on the state's theory that Montgomery killed Ogle on March 8, 1986, it explained that in the context of all the evidence, the report would actually have undermined Montgomery's defense. Specifically, Montgomery had voluntarily sought out the police at noon on March 12, 1986, and admitted that both Tincher and Ogle had been killed with his gun, but insisted that Heard was the shooter. The report of the March 12, 1986 sighting of Ogle, however, would have "exonerate[d] Heard as Ogle's shooter because [Heard] was imprisoned by the time of the alleged sighting on March 12." *Id.* at 681.

{¶ 26} In addition to this, the court rejected Montgomery's contention that the police report could have impeached Heard's testimony because it had previously held that

where undisclosed evidence merely furnishes an additional basis to challenge the credibility of a witness whose credibility has already been shown to be questionable, the undisclosed evidence may be cumulative, and, therefore, not material. *Id.* The court concluded that Heard's testimony had been effectively impeached at trial, and the jury was aware of Heard's motive to implicate Montgomery as the triggerman. Additionally, the court noted that if Montgomery had called witnesses on his behalf regarding the alleged sighting of Ogle on March 12, 1986, those witnesses would have been subjected to cross-examination, at which point "the State quite likely could have successfully obtained the witnesses' admissions that they had in fact been mistaken about the sighting of Ogle and had instead seen her sister." *Id.* at 683.

{¶ 27} In sum, while the court did not condone the state's failure to disclose the evidence, it concluded that the failure to provide Montgomery with the police report did not amount to constitutional error.

{¶ 28} Following the Sixth Circuit's en banc decision, Montgomery filed a petition for writ of certiorari in the U.S. Supreme Court, but his petition was denied on May 14, 2012. *Montgomery v. Robinson*, 132 S.Ct. 2376, 182 L.Ed.2d 1026 (2012).

### F. Montgomery seeks a new trial in the common pleas court.

{¶ 29} On February 7, 2013, Montgomery filed a Crim.R. 33 motion for a new trial in the trial court. In his motion, he explained that while his petition for writ of certiorari was pending before the U.S. Supreme Court, he received funding to obtain the services of expert forensic pathologists to review the case. These expert pathologists

11.

provided a report dated January 12, 2012. They observed that Ogle's autopsy report made no mention of decay or degradation of her body. They explained that given the temperatures over the four days during which Ogle's body allegedly lay in the woods, there would have been changes in the color of her skin and attacks by wildlife.

{¶ 30} Additionally, the autopsy report indicated that there was "moderate posterior fixed lividity and slight fixed lividity of the left anterior surface of the body." Montgomery's expert pathologists explained that "lividity" refers to a discoloration of the skin that is useful in determining the position of the body at the time of death and whether the body was moved within the few hours after death. They described that lividity is fixed within about 12 hours after death. After lividity is fixed, the pattern of discoloration will not change.

{¶ 31} Here, the officer who found Ogle's body testified that she was lying face down, but the pictures entered into evidence showed that she had been rolled onto her left side by the officers at the crime scene. Montgomery's expert pathologists stated that if Ogle's body had been face down for four days, lividity would have fixed on the front of her body and would not have changed when the body was turned to the left. They described that lividity shifted to the left side of Ogle's body when she was moved, thus she could not have died on March 8, 1986.

{¶ 32} Montgomery insisted that this new evidence, especially when coupled with the police report that was withheld from him indicating that classmates saw Ogle alive on

12.

March 12, 1986, entitled him to a new trial. He attached the expert pathology report dated January 15, 2012.

{¶ 33} The state moved to dismiss Montgomery's motion for new trial for failing to comply with Crim.R. 33. It pointed out that Montgomery failed to request leave to file a delayed motion and failed to show by clear and convincing proof that he was unavoidably prevented from filing his motion within 120 days of his conviction. The state also explained that Montgomery obtained information about the withheld police report in 1992, and unsuccessfully sought postconviction relief as a result, yet waited until his writ for habeas corpus was rejected by the Sixth Circuit before attempting to secure expert assistance. The state describes that this evidenced not that Montgomery was "unavoidably prevented" from filing his motion within 120 days, but that he simply failed to exercise due diligence. The state argued that Montgomery should have developed forensic evidence at trial or, at the latest, in 1992 when he received the previously-withheld police statement. Also, it reminded that the witnesses who reported seeing Ogle on March 12, 1986, had already clarified that it was Ogle's sister they saw— not Ogle.

{¶ 34} In response to the state's motion to dismiss, Montgomery acknowledged that he neglected to move for leave to file his petition for a new trial and asked the court to treat his motion as such. Montgomery also advised the court that in the pleadings filed before the U.S. Supreme Court, the state suggested that Montgomery pursue a motion for new trial in the trial court. He maintained that it was improper for the state to suggest

13.

then that he file the present motion when trying to defeat his claim before the U.S. Supreme Court, but now argue to the trial court that the motion is improper.

{¶ 35} Montgomery also explained that without having the statement from the witnesses who claimed to see Ogle on March 12, 1986, there was no impetus to question the autopsy report. He emphasized that the timeline of the murders was essential to the state's case, and the basis for challenging that timeline did not exist until later. He insisted that it was only within the past 18 months that he obtained the funding necessary to develop the evidence.

{¶ 36} The state denied that it was estopped from opposing Montgomery's motion for new trial based on previous arguments about the proper procedure for presenting such a request. And it maintained that despite seeking leave to file a motion for a new trial in his opposition brief, Montgomery had still failed to demonstrate by clear and convincing proof that he was unavoidably prevented from discovering the "new" evidence either during trial or within 120 days after trial had he exercised due diligence. The state claimed it would be prejudiced in the event a new trial was granted.

{¶ 37} In a decision journalized on October 1, 2015, the trial court denied Montgomery's motion. It recited language from our decision in *State v. Peal*, 6th Dist. Lucas No. L-10-1035, 2010-Ohio-5893, as to the standard for filing a motion under Crim.R. 33(B) on account of newly discovered evidence beyond 120 days after the jury's verdict. It observed that Montgomery failed to "submit any evidence or affidavits to show unavoidable delay by establishing that he had no knowledge of the ground

14.

supporting the motion for new trial or that he could not have learned of the existence of that ground within the time prescribed for filing the motion in the exercise of reasonable diligence." It concluded that Montgomery's denial of funds by various courts was "insufficient to make a showing by clear and convincing evidence that defendant was unavoidably prevented from filing his motion in a timely fashion." And it noted that "defendant does not request a hearing on this matter." Accordingly, it held:

> [B]ased upon the arguments of counsel, Crim.R. 33, and all relevant case law, the Court finds that defendant has failed to show by clear and convincing evidence that he has been unavoidably prevented from filing a motion in a timely fashion or that defendant is entitled to a hearing on this matter. Therefore, the Court finds Defendant's Motion for Leave to File a Motion for New Trial not well-taken and DENIED and the State of Ohio's Motion to Dismiss well-taken and GRANTED.

{¶ 38} Montgomery filed a timely notice of appeal and assigns the following errors for our review:

> ASSIGNMENT OF ERROR I: THE TRIAL COURT ERRED AND VIOLATED MR. MONTGOMERY'S RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS BY DENYING HIS MOTION FOR LEAVE TO FILE A DELAYED MOTION FOR NEW TRIAL.
>
> ASSIGNMENT OF ERROR II: THE TRIAL COURT ERRED AND VIOLATED MR. MONTGOMERY'S RIGHTS UNDER THE

UNITED STATES AND OHIO CONSTITUTIONS BY DENYING MR.

MONTGOMERY'S MOTION FOR NEW TRIAL WITHOUT HOLDING

A HEARING.

ASSIGNMENT OF ERROR III: THE TRIAL COURT ERRED

AND VIOLATED MR. MONTGOMERY'S RIGHTS UNDER THE

UNITED STATES AND OHIO CONSTITUTIONS BY DENYING MR.

MONTGOMERY'S MOTION FOR A NEW TRIAL.

## II. Law and Analysis

{¶ 39} Montgomery identifies three purported errors on appeal: (1) the trial

court's denial of his motion for leave to file a delayed motion for new trial; (2) the failure

of the trial court to hold a hearing on his motion; and (3) the trial court's denial of his

motion for a new trial. We address each of these assignments in turn.

### A. The denial of Montgomery's motion for leave to file a delayed motion for new trial.

{¶ 40} In his first assignment of error, Montgomery challenges the trial court's

denial of his motion to file a delayed motion for a new trial. He argues, first, that the trial

court applied an incorrect standard in considering his motion for leave. He then claims that

he was unavoidably prevented from filing his motion within 120 days of the jury's verdict

and, second, that he filed his motion within a reasonable time of discovering the evidence.

We review the denial of leave to file a delayed motion for a new trial under an abuse-of-

discretion standard. *State v. Willis*, 6th Dist. Lucas No. L-06-1244, 2007-Ohio-3959, ¶ 12.

16.

An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**1. Did the trial court apply the correct standard in determining whether to grant leave to file a delayed motion for new trial?**

{¶ 41} Crim.R. 33(A)(6) provides that a new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. * * *

{¶ 42} Crim.R. 33(B) addresses the time for filing a motion for new trial. It provides, in pertinent part:

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the

17.

defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶ 43} A defendant who fails to file a motion for a new trial based on newly discovered evidence within 120 days of the jury's verdict must seek leave from the trial court to file a delayed motion.[1] *State v. Berry*, 10th Dist. Franklin No. 06AP-803, 2007-Ohio-2244, ¶ 19. Crim.R. 33(B) does not specify a time limit for filing a motion for leave to file a delayed motion for new trial, but courts have adopted a reasonableness standard. *State v. Thompson*, 6th Dist. Lucas No. L-15-1006, 2016-Ohio-1399, ¶ 17. Under this standard, "[a] trial court may require a defendant to file his motion for leave to file within a reasonable time after he discovers the evidence." (Internal citations and quotations omitted.) *Id.*

{¶ 44} To obtain leave to file a delayed motion for a new trial, the defendant must provide "clear and convincing" proof that he was "unavoidably prevented" from discovering the evidence on which his motion for a new trial is based. *Id.* at ¶ 15, citing *State v. Sandoval*, 6th Dist. Sandusky Nos. S-13-032, S-13-034, 2014-Ohio-4972, ¶ 13, quoting Crim.R. 33(B). "[A] party is unavoidably prevented from filing a motion for

---

[1] Montgomery captioned his motion in the trial court as a "Motion for New Trial." The state moved to dismiss Montgomery's motion, observing that Montgomery did not request leave of court to file a delayed motion and, as such, failed to comply with Crim.R. 33. Montgomery acknowledged in his reply brief that he neglected to seek leave and, therefore, sought leave via his reply brief. The trial court treated his motion as one for leave and analyzed it as such.

18.

new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *Sandoval* at ¶ 13, quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984).

{¶ 45} The trial court observed that Montgomery failed to submit any evidence or affidavits to show that he had no knowledge of the existence of the grounds supporting his motion for new trial, or that he could not have learned of the existence of those grounds with reasonable diligence within the time prescribed for filing the motion. While the court acknowledged that Montgomery claimed to have been "denied funds by various courts at all stages of this process," and that he had filed a request for writ of certiorari in the U.S. Supreme Court, it concluded that "[t]his alone is insufficient to make a showing by clear and convincing evidence that defendant was unavoidably prevented from filing his motion in a timely fashion."

{¶ 46} Montgomery claims that the court applied an incorrect standard. He insists that "the trial court's standard of 'clear and convincing' evidence of being 'unavoidably prevented' from filing the motion in a 'timely fashion' is not supported by any rule or case law in Ohio and is, thus, error."

{¶ 47} Contrary to Montgomery's contention, both this court and courts across the state frequently apply the standard recited by the trial court. *See State v. Peals*, 6th Dist. Lucas No. L-10-1035, 2010-Ohio-5893, ¶ 20 ("In order to be able to file a motion for a

19.

new trial based on newly discovered evidence beyond the one hundred and twenty days prescribed in the above rule, a petitioner must first file a motion for leave, showing by clear and convincing proof that he has been unavoidably prevented from filing a motion in a timely fashion."). *See also State v. Redd*, 6th Dist. Lucas No. L-13-1087, 2013-Ohio-5181, ¶ 8; *State v. Blakely*, 6th Dist. Lucas Nos. L-12-1034, L-12-1074, 2013-Ohio-1080, ¶ 14; *State v. Dixon*, 2d Dist. Montgomery No. 26873, 2016-Ohio-5538, ¶ 28; *State v. Cunningham*, 3d Dist. Allen No. 1-15-61, 2016-Ohio-3106, ¶ 29, *State v. Stewart*, 4th Dist. Washington No. 02CA29, 2003-Ohio-4850, ¶ 13; *State v. Croom*, 7th Dist. Mahoning No. 14 MA 0175, 2016-Ohio-5686, ¶ 11; *State v. Glover*, 8th Dist. Cuyahoga Nos. 102828, 102829, 102831, 2016-Ohio-2833, ¶ 27; *State v. Mosley*, 10th Dist. Franklin No. 07AP-860, 2008-Ohio-951, ¶ 9; *State v. Alexander*, 11th Dist. Trumbull No. 2011-T-0120, 2012-Ohio-4468, ¶ 15.

**{¶ 48}** Having said this, we understand the distinction that Montgomery seeks to draw—i.e., that the first inquiry is whether there is clear and convincing proof that defendant was unavoidably prevented from filing his motion within 120 days, and the second inquiry is whether defendant filed his motion within a reasonable time after discovering the evidence supporting the motion. While we agree with this interpretation, we do not agree that the standard recited by the court is at odds with this interpretation. We, therefore, proceed to the trial court's application of the standard.

20.

**2. Did the trial court reach the proper result when it denied Montgomery's motion for leave to file a delayed motion for new trial?**

{¶ 49} Montgomery contends that he established by clear and convincing evidence that he was unavoidably prevented from discovering the evidence within 120 days of the verdict. He explains that because the state failed to turn over the police report, he was unaware of the need to obtain an expert opinion regarding Ogle's time of death. And, he elaborates, after becoming aware of the undisclosed police report and the need for review by an expert forensic pathologist, he was unable to obtain funding to retain an expert until approximately 18 months before filing his motion.

{¶ 50} Montgomery also points out that once he obtained funding to retain a forensic pathology expert, he was in the midst of the federal court proceedings pertaining to his petition for writ of habeas corpus. He insists that he thought it inappropriate to begin parallel state proceedings while he was pursuing relief in the federal courts, and that the state indicated during briefing in the U.S. Supreme Court that Montgomery's appropriate avenue was to file a motion for new trial in state court. He maintains that defense counsel "came into possession of the expert report" while the issue of the withheld police report was being litigated in federal court. He insists that the timing of the motion was reasonable within the context of the case because habeas counsel waited only six months after the end of the habeas proceedings and certiorari review before filing the motion for new trial.

21.

{¶ 51} Finally, Montgomery states that the purpose of the "reasonable time" requirement is to avoid prejudice to the state. He contends that the state has never alleged prejudice and insists that the state has suffered no prejudice in the time between Montgomery obtaining the expert report and filing the motion for new trial.

{¶ 52} In denying Montgomery's motion, the trial court did not separately consider (1) whether he was unavoidably prevented from discovering the evidence before the 120-day deadline expired, and (2) whether he filed his motion within a reasonable time after discovering the evidence. Nevertheless, we conclude that the trial court reached the correct result.

{¶ 53} As to the first consideration, we find merit to Montgomery's position that until he received the withheld police report, he lacked a basis for challenging the state's position as to Ogle's time of death. He did not receive the withheld police report until six years after the verdict. As such, Montgomery arguably presented clear and convincing evidence that he was unavoidably prevented from filing a motion for new trial within 120 days of the verdict. Having said this, with respect to whether Montgomery then filed his motion for new trial within a reasonable time following his discovery of the evidence supporting his motion for new trial, we find his position problematic.

{¶ 54} Montgomery learned of the withheld police report in 1992. He filed his motion for new trial on February 7, 2013. While Montgomery insists that he requested funding from various courts to pursue a challenge to Ogle's time of death, he presented

22.

no evidence providing to whom those requests were made, when they were made, and when they were denied.

{¶ 55} Moreover, Montgomery's expert forensic pathologists' report is dated January 15, 2012. His petition for writ of certiorari was denied by the U.S. Supreme Court on May 14, 2012, yet he waited until February 7, 2013, to file his motion for new trial. We disagree with Montgomery that it was reasonable to wait almost nine months to pursue his motion. *Compare State v. Glover,* 8th Dist. Cuyahoga Nos. 10828, 102829, 102831, 2016-Ohio-2833, ¶ 16 (affirming trial court's grant of motion for leave to file motion for new trial where defendants obtained previously-withheld reports via public records request in "late August 2014" and filed motion on August 26, 2014). Montgomery provided no explanation for why he waited so long to file his motion. "If there has been a significant delay, the trial court must determine whether the delay was reasonable under the circumstances or whether the defendant has adequately explained the reason for the delay." (Internal citations and quotations omitted.) *State v. Howard*, 10th Dist. Franklin No. 06CR-9525), 2016-Ohio-504, ¶ 50. Here, Montgomery has failed to adequately explain the reason for his delay.

{¶ 56} Accordingly, we conclude that Montgomery did not file his motion for leave to file a delayed motion for new trial within a reasonable time after discovering the evidence supporting the motion. We find his first assignment of error not well-taken.

23.

**B. The failure to hold a hearing on Montgomery's motion.**

{¶ 57} Montgomery argues in his second assignment of error that the trial court must hold a hearing on the issue of whether the defendant was "unavoidably prevented" from timely discovering the evidence supporting his motion for new trial.

{¶ 58} "A defendant is entitled to a hearing on his motion for leave if he submits 'documents that on their face support his claim that he was unavoidably prevented from timely discovering the evidence at issue.'" (Citations omitted.) *State v. Thompson*, 6th Dist. Lucas No. L-15-1006, 2016-Ohio-1399, ¶ 15. Montgomery claims that his experts' report, combined with his explanation about the withheld police report, constituted evidence that on its face supported his motion for new trial. Our decision to affirm the trial court's decision recognizes that Montgomery was unavoidably prevented from discovering the facts to support his motion before the 120-day deadline expired. We, therefore, conclude that any purported error in failing to conduct a hearing was harmless.

{¶ 59} We find Montgomery's second assignment of error not well-taken.

**C. The denial of Montgomery's motion for a new trial.**

{¶ 60} In light of our disposition of Montgomery's first and second assignments of error, we need not address Montgomery's third assignment of error relating to the denial of his motion for new trial.

24.

### III. Conclusion

**{¶ 61}** We find Montgomery's first two assignments of error not well-taken. In light of our resolution of his first two assignments of error, we need not consider his third assignment of error. We affirm the October 1, 2015 judgment of the Lucas County Court of Common Pleas. Montgomery is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.       _____
               JUDGE
Stephen A. Yarbrough, J.

              _____
James D. Jensen, P.J.       JUDGE
CONCUR.

              _____
               JUDGE